Ian Wallach (SB237849)
Law Office of Ian Wallach, PC
5777 West Century Boulevard, Suite 750
Los Angeles, CA 90045
T: (213) 375-0000  F: (213) 402-5516
iwallach@wallachlegal.com

Attorneys for Defendant
Roderick C. Reed

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RODRICK C. REED,<br><br>Defendant. | Case No. EDCR 03-00084-VAP-1<br><br>NOTICE OF MOTION; MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1); DECLARATION OF IAN WALLACH, EXHIBITS; DECLARATION OF KATHLEEN CAULFIED, EXHIBITS |

Defendant Rodrick C. Reed, by and through his attorney of record, hereby moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1).

This motion is based on the attached memorandum of points and authorities, the Declaration of Ian Wallach and attached exhibits, the Declaration of Kathleen Caulfield and attached exhibits, and all the records in this case.

Dated May 20,2021
Los Angeles, CA

Respectfully submitted,

By: _____
Ian Wallach

1

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   PROCEDURAL HISTORY ........................................................ 2

III.  ARGUMENT ............................................................................. 3

    A.    Summary of Argument ...................................................... 3

    B.    Legal Standard .................................................................. 4

        1.    Mr. Reed Has Satisfies The Criteria To Be Granted Relief Under Section 3582 ........................................ 4

    C.    Mr. Reed Has Exhausted His Administrative Remedies ...................... 5

    D.    Mr. Reed's Substantial Rehabilitation, Lack of Disciplinary History, Development of Debilitating Effects of Covid-19, And Strong Community Support Available For His Release And Re-Entry Constitute Extraordinary And Compelling Reasons Warranting A Sentencing Reduction ...................... 6

        1.    Mr. Reed's rehabilitation while incarcerated Constitutes, in conjunction with other facts listed below, an "Extraordinary and Compelling Reason" warranting a sentence reduction under the First Step Act ........................................................ 6

            a.    Other courts are in agreement that personal growth contributes to extraordinary and compelling reasons supporting compassionate release ............................................ 6

            b.    Mr. Reed is not the person that, at the time of his sentencing hearing, he was defined to be, and has proven to be a model inmate ........................... 7

            c.    Mr. Reed has strong community ties and family prepared to assist him upon re-entry ...................... 9

            d.    Mr. Reed has a place to live and an employment offer in the event he is released ........................... 12

        2.    The debilitating effects resulting from Mr. Reed's COVID-19 infection, including the loss of smell and his incapacity to continue to exercise in the same fashion as he was able prior to his infection, in conjunction with other grounds set forth herein, constitutes an "Extraordinary and Compelling Reason" warranting relief under the First Step Act ...................... 13

TABLE OF CONTENTS

E.    The Unusually Long Sentence Of Mr. Reed Is, In Conjunction With Other Factors Listed Above, And Extraordinary And Compelling Reason Warranting Compassionate Release...........................................14

F,    A Consideration Of The Section 3553(A) Factors Establish That A Sentence Of 300 Months Sufficient............................................15

        1.    The nature and circumstances of Mr. Reed's offense weigh in favor of the requested sentence reduction ...................................15

        2.    A sentence of 300 months reflects the seriousness of the offense, promotes respect for the law, and provides just punishment ..................................................................16

        3.    A sentence of 300 months affords adequate deterrence to the criminal conduct at issue..............................................16

        4.    The time Mr. Reed has served is sufficient to protect the public from further crimes he is capable of committing.......................17

        5.    A sentence of 300 months, rather than life, will better promote Mr. Reed's efforts to continue his educational pursuits and vocational training, and allow him to treat the effects of his COVID infection outside of the prison medical system...............................18

        6.    A sentence of 300 months, while outside of the Guideline Range, is sufficient for the harm incurred.......................................19

IV.    CONCLUSION ...........................................................................19

TABLE OF AUTHORITIES

Federal Cases

*Dillon v. United States*, 560 U.S. 817, 819 (2010)................................................................4

*United States v. Aruda*, 2021 U.S. App. LEXIS 10119, *10, 993 F.3d 797 (9th Cir. 2021)........................................................................................................................................4,5

*United States v. Brim*, No. 8:93-00098-DDP (C.D. Cal. Feb. 26, 2021) (Pregerson, J.).............................................................................................................................................7

*United States v. Brooker*, 976 F.3d 228, 234-37 (2d Cir. 2020) ................................. 3, 14

*United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ........................................ 3,4

*United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) .......................................... 3

*United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 U.S. Dist. LEXIS 28392, 2020 WL 806121, at *6-*7 (D. Utah Feb. 18, 2020) ..................................................... 14

*United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020)....................................... 3

*United States v. McGee*, No. 20-5047, 2021 U.S. App. LEXIS 9074, 2021 WL 1168980, at *12 (10th Cir. Mar. 29, 2021)........................................................................ 3

*United States v. Pressley*, 345 F.3d 1205, 1219 (11th. Cir. 2003) ................................ 13

*United States v. Seresi*, No. 2:89-cr-00190-SVW-17 (C.D. Cal. Nov. 12, 2020), (Wilson, J.), .......................................................................................................................... 6

*United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007).....................................13-14

Federal Statutes

18 U.S.C. § 2 ....................................................................................................................... 2

18 U.S.C. § 371  .................................................................................................................. 2

18 U.S.C. § 3553(a) .................................................................................................... 5,13,15

# TABLE OF AUTHORITIES

18 U.S.C. § 3582(c)(1)(A ............................................................................... 3,4,5

21 U.S.C. § 841(b)(1)(a) ................................................................................... 2

21 U.S.C. § 846 ................................................................................................ 2

21 U.S.C. § 846(a)(1) ....................................................................................... 2

21 U.S.C. § 851 ............................................................................................. 1,3

26 U.S.C. § 5861 ............................................................................................. 2

Other Authorities

Federal Bureau of Prisons, FSA Numbers, www.bop.gov/inmates/fsa
(last visited May 17, 2021).............................................................................. 3

U.S. Sent'g Comm'n, Statistical Information Packet for the Central District
of California 11 & tbl.7 (2019) ...................................................................... 14

U.S. Sent'g Comm'n, The Effect of Aging on Recidivism Among Federal Offenders
23 (Decl. 2017).............................................................................................. 17

ii

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mr. Rodrick Reed ("Defendant" or "Mr. Reed") is a 52 year old father of three who is serving a life sentence for a non-violent drug crime. Twenty eight individuals were originally charged in this case and two defendants, Mr. Reed and George Williams, received life sentences. Aside from the two defendants who received life sentences, all of the other defendants in this case have finished serving their original sentences.[1] Mr. Reed has been in custody since October 29, 2003.

Based on the amount of PCP at issue which yielded a Base Offense Level of 38, his leadership role, and his part in a conspiracy to possess a silencer, his Total Offense Level was calculated at Level 44 with a Criminal History Category II, which provided for a discretionary life sentence. Furthermore, the Government filed an Information charging that Mr. Reed has a prior drug conviction which, pursuant to 21 U.S.C. 851, increased the minimum mandatory sentence he faced from 10 years to 20 years.

At the time of sentencing, the Department of Probation recommended a sentence of 300 months (25 years). Declaration of Ian Wallach ("Wallach Decl.") at ¶ 2, Exhibit A (filed under seal).

The Court imposed a life sentence. [ECF 1190].

Mr. Reed's conduct in prison has shown that he is no longer the same man that he was in 2003 when the offenses occurred or 2006 when sentencing took place. Since his conviction, Mr. Reed has been an exceptional inmate -- having only one write-up during his entire period of incarceration (for phone abuse – he borrowed an inmate's card during an urgent situation). Wallach Decl. at ¶ 3, Exhibit B. Mr. Reed has kept in contact with his family. Mr. Reed has mentored fellow inmates. Mr. Reed contracted COVID-19 and still suffers from the side effects (in addition to other health problems.)

---

[1] It appears that co-defendant Marvin Jefferson is in custody, however, on a new matter. His original sentence in 2006 was 97 months.

1

Affidavit of Kathleen Caulfield ("Caulfield Aff., ¶¶ 2, 4-5). And, as the Court is well-aware, the hardships of prison have, for many inmates, changed as a result of the COVID-19 pandemic.  Caulfield Aff. ¶ 2.

Even though Mr. Reed has been sentenced to life, his community and family are eager to support his re-entry should he be granted the opportunity of release.

The above reasons are extraordinary and compelling and warrant reducing Mr. Reed's sentence from life to 300 months.

## II. PROCEDURAL HISTORY

Mr. Reed was Defendant Number 1 in a 28-defendant case for which a Complaint was filed on August 12, 2003 [ECF No. 1] and an indictment was filed on October 23, 2003 [ECF No. 4].  Mr. Reed was charged with four counts – one count of Conspiracy to Manufacture; to Aid and Abet the manufacture of and to Possess with Intent to Distribute PCP (21 U.S.C. §§ 846, 846(a)(1), 841(b)(1)(a) (with a maximum sentence of life in prison and a ten year mandatory minimum) ("Count 1"); one count of Distribution of PCP: Aiding and Abetting (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 18 U.S.C. § 2) (with a maximum sentence of life in prison and a ten year mandatory minimum) ("Count 2"); Attempt to Manufacture PCP; Aiding and Abetting (21 U.S.C. § 846, 841(b)(1)(A), 18 U.S.C. § 2) (with a maximum sentence of life in prison and a ten year mandatory minimum) ("Count 3"), and one count of Conspiracy to Possess Silencers (18 U.S.C. § 371; 26 U.S.C. § 5861) ("Count 4) (with a maximum sentence of five years).

The Government alleged that Mr. Reed was the ringleader of a conspiracy to manufacture and distribute PCP, and that Mr. Reed was also in a conspiracy to possess a silencer.

On July 28, 2005 Mr. Reed was found guilty -- following 10 day trial -- of Count 1, Count 2, Count 3, and Count 4.  [ECF No. 1001; 1002]; see also Judgment and Commitment Order of January 17, 2006 [ECF No. 1190].

2

On December 5, 2005, Mr. Reed's admission of his prior conviction was accepted by the this Court and the conviction was established pursuant to Section 851. [ECF 1132].

On January 17, 2006, Mr. Reed was sentenced to life in prison.  [ECF No. 1193]. In large part, the Court found that Mr. Reed's dangerousness, his recruiting of co-defendants, his threats and possession of a silencer, and the damages to society from PCP, rendered him worthy of life-time incarceration.

Fifteen years later, on February 16, 2021 Mr. Reed filed a *pro se* Motion For Compassionate Release Pursuant To 18 U.S.C. Section 3582(c)(1)(A) And The First Step Act.  This amended motion follows.

## III.ARGUMENT

A.    Summary of Argument

The Court has the authority to reduce Mr. Reed's sentence from life to 300 months.  The First Step Act expanded the Bureau of Prisons' formerly-sole discretion as to who may seek "compassionate release" from the courts – now allowing parties to do so independently.  And district courts have been actively granting these petitions – and have done so in at least 3,751 cases—and counting.[2]  And in April of 2021, this Circuit joined the Second[3], Fourth[4], Sixth[5], Seventh[6] and Tenth[7] Circuits, in finding that the district court's authority to grant compassionate release is not bound by the

---

[2] *See* Federal Bureau of Prisons, FSA Numbers, www.bop.gov/inmates/fsa (last visited May 17, 2021).

[3] *United States v. Brooker*, 976 F.3d 228, 234-37 (2d Cir. 2020).

[4] *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020)

[5] *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020)

[6] *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)

[7] *United States v. McGee,* No. 20-5047, 2021 U.S. App. LEXIS 9074, 2021 WL 1168980, at *12 (10th Cir. Mar. 29, 2021)

3

restrictions set out in U.S. Sentencing Guideline 1B1.13. In Un*ited States v. Aruda*,
2021 U.S. App. LEXIS 10119, *10, 993 F.3d 797 (9th Cir. 2021), the 9th Circuit held:

> We agree with the persuasive decisions of our sister circuits and also
> hold that the current version of U.S.S.G. § 1B1.13 is not an "applicable policy
> statement[]" for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant. In
> other words, the Sentencing Commission has not yet issued a policy
> statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant. The
> Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a
> district court's discretion for § 3582(c)(1)(A) motions filed by a defendant,
> but they are not binding. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th
> Cir. 2020).

Mr. Reed presents a compilation of "extraordinary and compelling" grounds in
support of his request for a sentencing reduction pursuant to § 3582(c)(1)(A).  Mr.
Reed's rehabilitation, his acceptance of responsibility, the hardships that he has endured
(and continues to endure) as a result of his COVID-19 infection, the additional
hardships experienced by inmates in relation to the COVID-19 epidemic while in BOP
custody, and the strong family and societal support that he still maintains (who are
eager to assist in re-entry), establish that Mr. Reed is ready and deserving of a second
chance.  And if released, Mr. Reed has a well-developed reentry plan – which includes
a place to live, a job, and a tremendous support network.

In sum, Mr. Reed is not the man that he once was, and no longer presents a
societal threat.  He deserves a chance, even a few years in the future, to re-enter society.

B.    Legal Standard

1.    Mr. Reed Has Satisfied The Criteria To Be Granted Relief Under
Section 3582

"A federal court generally 'may not modify a term of imprisonment once it has
been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. §
3582(c)).  However, congress provided an exception allowing a sentence to be reduced

for "extraordinary and compelling reasons.  18 U.S.C. § 3582(c)(1)(A).  This exception is referred to herein as "compassionate release".

There are three issues associated with such an application and are now before this Court – (1) whether Mr. Reed has exhausted his administrative remedies; (2) whether Mr. Reed demonstrated an "extraordinary and compelling reason" for release; and (3) whether the balancing of § 3553(a) factors weighs in favor of granting compassionate release.[8]  Each of the factors weigh in favor of granting Mr. Reed's request for a reduction in his sentence.

C.    Mr. Reed Has Exhausted His Administrative Remedies

"…[A]s part of the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to also allow a defendant to seek a reduction directly from the court, provided that the defendant first seeks a reduction from the BOP and that request has either been denied or 30 days have passed. Pub. L. No. 115-391, Title VI, sec. 603(b)(1), § 3582, 132 Stat. 5194, 5239 (2018)".  *United States v. Aruda*, 2021 U.S. App. LEXIS 10119, *4 (9th Cir. 2021)

On September 10, 2020, Mr. Reed submitted his request to the Bureau of Prisons ("BOP") seeking compassionate release pursuant to 18 U.S.C. § 3582. Wallach Decl., ¶ 4, Exhibit C.  On October 6, 2020, that request was denied.  *Id.*  Mr. Reed has exhausted his administrative remedies.

---

[8] In *United States v. Aruda*, 2021 U.S. App. LEXIS 10119, *4 (9th Cir. 2021), the Ninth Circuit ruled that a finding of "dangerousness" is not a consideration when determining certain applications brought under § 3582 as the applicable policy statement -- U.S.S.G. § 1B1.13 -- predates the First Step Act and is not applicable. However, as will be shown, if released after 300 months, Mr. Reed shall pose no danger to society.

1
2
3

D.    Mr. Reed's Substantial Rehabilitation, Lack of Disciplinary History, Development of Debilitating Effects of Covid-19, And Strong Community Support Available For His Release And Re-Entry Constitute Extraordinary And Compelling Reasons Warranting A Sentencing Reduction

4
5
6
7

1.    Mr. Reed's rehabilitation while incarcerated constitutes, in conjunction with other facts listed below, an "extraordinary and compelling reason" warranting a sentence reduction under the First Step Act

8
9
10

a.    Other courts are in agreement that personal growth contributes to extraordinary and compelling reasons supporting compassionate release

11
12
13

Mr. Reed's personal growth during his incarceration is an extraordinary and compelling reason that, in connection with other grounds, support his claim for a reduction in his sentence from one of life to one of 300 months.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Courts in this circuit have construed a wide range of reasons to be sufficiently extraordinary and compelling – and these include, *inter alia*, personal growth of a defendant, a defendant's age, a defendant's health infirmities, and a defendant's family's circumstances. For example, in the following cases the Central District court has found grounds similar to those asserted by Mr. Reed herein to constitute "extraordinary and compelling" reasons to grant compassionate release.  In *United States v. Seresi*, No. 2:89-cr-00190-SVW-17 (C.D. Cal. Nov. 12, 2020), [ECF No. 1417 at 2] (Wilson, J.)*,* the defendant. Like Mr. Reed, was serving a life sentence for a non-violent offense. Whereas Mr. Reed was a ringleader, Mr. Seresi was a "key employee of the ringleaders" of the criminal enterprise.  Like Mr. Reed, the defendant had only one minor violation during his time in the custody of the Bureau of Prisons.  Mr. Seresi had served 30 years of his life sentence, whereas – at the time of Mr. Reed's proposed release (after 300 months of incarceration) – Mr. Reed will have served 25 years of his sentence.  And whereas Mr. Seresi's academic achievements were more impressive,

28

6

both Mr. Seresi and Mr. Reed completed a substantial amount of coursework to better

themselves and prepare for potential re-entry into society.  The Court in *Seresi* found

that the defendant's substantial rehabilitation, health, and age were together

"extraordinary and compelling reasons" to warrant compassionate release.  *Id.*

Similarly, in *United States v. Brim*, No. 8:93-00098-DDP (C.D. Cal. Feb. 26,

2021) (Pregerson, *J.*), ECF No. 581, the defendant, like Mr. Reed, was sentenced to life

in prison for a non-violent PCP-related offense.  [*Brim*, ECF No. 245; ECF No. 1].

This Court found extraordinary and compelling reasons warranting a sentencing

reduction from life to time served.[9]

> b.    Mr. Reed is not the person that, at the time of his sentencing
>       hearing, he was defined to be, and has proven to be a model
>       inmate

At the sentencing hearing on January 17, 2003, the Court found that Mr. Reed

was a dangerous man and that society was best served by his life-long incarceration.[10]

In Mr. Reed's letter to the Court (Wallach Decl., ¶ 6, Exhibit E), he writes:  "I

am not proud of who I was then or the things I was doing that brought me to a life in

prison.  Back then I made a lot of excuses about my bad choices.  Today I have a

different view of things."  Mr. Reed's record as an inmate in prison, and his positive

influence on people both inside and outside the prison, give weight to his words.

The assessment on Mr. Reed's most recent BOP Progress Report reads:

> Reed is considered a model inmate at USP Atwater.  He is a
> hard worker with excellent evaluations and strives to prepare
> for his potential release even though he currently has a life
> sentence.  He has excellent rapport with staff and inmates and

---

[9] In *Brim*, the grounds for the reduction were not stated on the record and are not
readily available through PACER.

[10] On April 8, 2021, the undersigned counsel received an email from Court
Reporter Phyllis Preston, stating that she no longer has the transcript from the
sentencing hearing.  Mr. Reed has one copy, with some markings, that is being
provided.  Wallach Decl., ¶ 5, Exhibit D.

1
2

has a great inmate reputation at US Atwater.  He has been at
USP Atwater since 2006.

3

Wallach Decl., ¶ 3, Exhibit B.

4
5
6

Four individuals who served or are serving time with Mr. Reed took the time to
provide letters to the Court that give a more intimate look at Mr. Reed's new
perspective on life and anecdotes that demonstrate that he is a changed man.

7
8
9
10
11
12
13
14
15
16

Gerald Jarrett was sentenced to a life sentence when he was 22.  Today he is 47
years old.  He was released from custody in 2019.  He states that Mr. Reed was a big
brother to him and that Mr. Reed encouraged him to obtain his paralegal certificate –
which Mr. Garrett did.  He writes that he has seen Mr. Reed express his remorse and
regret for his conduct, and that Mr. Reed inspired him to stay out of trouble .  He also
writes that Mr. Reed "exemplified a keen interest in giving back to society" and that he
worked with younger inmates "to shed light on the other side of the neighborhood so
that they avoid the pitfalls we fell in."  Mr. Jarrett happily reports that he recently
received his trucker's license and will be getting married soon.  He writes that Mr.
Reed's "advice and guidance gave me a second chance." Wallach Decl., ¶ 7, Exhibit F.

17
18
19
20
21
22
23

Alephious Rooks was also sentenced to a life sentence but was released in 2016.
In his letter he explains that prior to his incarceration he always struggled with drug
addiction.  In prison he started using drugs again and it was Mr. Reed who encouraged
him to enroll in the prison drug program.  Mr. Rooks has been sober since 2016.  He
also states that he continues to receive advice and encouragement from Mr. Reed since
his release and talks to him about his "fears and frustrations during his transition back
to society." Wallach Decl., ¶ 8, Exhibit G.

24
25
26

Chris Turner writes that he spent almost 26 years in prison, 13 of which were
served at Atwater with Rodrick Reed.  He details some of the many ways that Mr. Reed
provides mentoring and inspiration to his fellow inmates.  He writes:

27
28

8

> [Reed] is the reason that I put in a request to enroll in the Honor
> Program and Challenge Unit at the USP in Atwater when
> everyone else tried to convince me that it was all a waste of
> time and energy. Even my Case Manager didn't think it would
> be a good idea to change Unit Teams at the time but it turned
> out to be one of the best decisions I ever made and it totally
> changed my mindset completely and helped prepare me to lead
> a pro social lifestyle.

Wallach Decl., ¶ 9, Exhibit H.

Gerald Smith is still serving a life sentence at Atwater.  He has known Mr. Reed for more than 10 years.  He writes that Reed encourages inmates, including himself, to learn vocational skills that will help them find employment and stay away from criminal activities.  He states that Mr. Reed challenges them to "think beyond the gang mentality." Wallach Decl., ¶ 10, Exhibit I.

These letters provide a glimpse into a man who is not the same man who received a life sentence from this court in 2006.  Mr. Reed has participated in a number of classes over the years at Atwater.  They are listed on the 2021 Inmate Education Transcript. Wallach Decl., ¶ 11, Exhibit J.  Mr. Reed's certificates are also attached. Wallach Decl., ¶ 12, Exhibit K.

### c.    Mr. Reed has strong community ties and family prepared to assist him upon re-entry

Despite the fact that Mr. Reed is serving a life sentence, he has maintained close relationships with his three boys.  Nidrick was 4 years old when Mr. Reed was incarcerated; Rodrick was 2 years old and Tristan was a newborn.  All three boys are in touch with their dad and have written letters to the Court which are attached.

Nidrick eloquently writes about losing both his mom and dad when he was so young; his father went to prison and his mother died shortly afterwards.  He writes of how his father has always been in regular contact with him, despite Mr. Reed's

9

incarceration.  He writes at length about how his dad has always emphasized the importance of education and choosing a career.  Nidrick writes,

> He has always encouraged me to do things the right way. He doesn't want me to end up where he is and he never stops reminding me to stay on a good path.

And mostly, Nidrick writes of his yearning to see and be with his dad. He writes that he "thought about moving up to the Chico area to live near my dad and I was going to enroll in the fire academy." Wallach Decl., ¶ 13, Exhibit L.

In Mr. Rodrick Reed's letter he makes reference to a time when Nidrick was going through a tough spell and that his aunt, Barbara Govan, brought Nidrick to Atwater to speak with his father.  Wallach Decl., ¶ 6, Exhibit E.  And Nidrick, in his own letter, refers to that day as "really special."  Wallach Decl., ¶ 13, Exhibit L.  It is evident that Nidrick respects and prioritizes the advice that his father gives him.

Mr. Reed's deep parental concern for Nidrick is also evident from anecdotes in two other letters.  Kathy Jones, a family friend of 38 years, mentions that Mr. Reed prevailed upon her to speak with Nidrick when it seemed that Nidrick was making some wrong decisions. Wallach Decl., ¶ 14, Exhibit M.  Likewise, Ezell Hall, another friend of many years, discusses the same time period, and states that Mr. Reed explained to him that Nidrick was "hanging around with the wrong people" and he asked Mr. Hall to talk with Nidrick.  Wallach Decl., ¶ 15, Exhibit N.

These anecdotes highlight not only Mr. Reed's devotion to his sons, but also his passionate desire to do everything in his power to make sure that his sons do not make the mistakes he did.

Rodrick, Mr. Reed's second son, writes:

> "Despite the distance from my dad, I have always maintained a relationship through telephone calls, letters and emails.  He is always included in our wins and has encouraging words when we need to be reminded of our potential."

10

Rodrick states that his dad's encouragement and the support system he created "allowed me to thrive in high school" where he became involved in the building and repairing of drones.  Today he is a sophomore at Norco Community College with plans to attend Cal Poly Pomona or California State University.   Wallach Decl., ¶ 16, Exhibit O.

Tristan was born after Mr. Reed went to jail and yet he also has an important and intimate relationship with his father.  Tristan writes:

> You might think that we don't have any kind of a father son relationship because he is in prison, but that's not true. He's always been in my life encouraging me, giving me advice and making sure that I spend time with my brothers. He tells me to stay away from people who are doing bad things or part of a gang. He tells me to believe in my dreams and follow them.

Wallach Decl., ¶ 17, Exhibit P.

Barbara Govan, who together with her husband, James, raised Nidrick and Rodrick, confirms that the relationship that Mr. Reed maintains with his boys is "remarkable."  She states, *inter alia*, that:

> [He] constantly nurtures their growth through advice or just a listening ear.  During our visits [at Atwater Prison], Rodrick would spend time with all of us and then give each son time for personal conversations. He would consistently encourage them to do well in high school, attain their driver's license and achieve every milestone as teenagers.  The boys enjoyed and looked forward to our visitation day.  It was amazing watching him with Nidrick and Rodrick.

Wallach Decl., ¶ 18, Exhibit Q.  Barbara tells the Court that she has known Mr. Reed and his family for 43 years.  She states that she believes Mr. Reed grown up and matured and based on her discussions, "his past is just that and he has no desire to resume where he left off." *Id.*

11

Traniel Brooks, the mother of Mr. Reed's son, Tristan, also confirms that Mr. Reed has been "an important and positive influence on our son Tristan" and "it is a big help to have him involved in Tristan's life."  She writes:

> I can tell that Rodrick is no longer the crazy guy that you sentenced so many years ago...I think you can feel sure that Rodrick Reed is not interested in the life that put him in prison. If I did not believe this, you can be sure I would have blocked my son from contact with his father.

Wallach Decl., ¶ 19, Exhibit R.

Tristan's grandmother, Virgie Lawson Brooks, writes that she has known Mr. Reed since 1995.  She writes that Mr. Reed "has done a lot of thinking and his ideas on life have changed a lot" and she is "proud and happy to see the changes and maturity in Rodrick."  Wallach Decl., ¶ 20, Exhibit S.

> d.    Mr. Reed has a place to live and an employment offer in the event he is released

The continuing support from family in friends is also highlighted by the fact that his aunt and uncle, Barbara and James Govan, will welcome Mr. Reed into their home in Fontana, where his middle son, Rodrick, continues to live while he attends college. Wallach Decl., ¶ 18, Exhibit Q.

Mr. Reed has an offer of employment from Lewhall Maintenance Inc./Lewhall Post Construction Cleanup, where he would work as a laborer with a starting wage of $15 an hour during the first 90 days. Wallach Decl., ¶ 21, Exhibit T.

Mr. Reed also has another offer -- a position with the non-profit organization, Heart to Heart.  In her letter, Kathy Jones writes, "The community we came from needs help from people like us who have survived so that the next generation can avoid the pitfalls and grand scale mistakes we made."   Wallach Decl., ¶ 14, Exhibit M.

2.     The debilitating effects resulting from Mr. Reed's COVID-19 infection, including the loss of smell and his incapacity to continue to exercise in the same fashion as he was able prior to his infection, in conjunction with other grounds set forth herein, constitutes an "Extraordinary and Compelling Reason" warranting relief under the First Step Act

Mr. Reed's Covid-19 infection increased the hardship associated with his confinement. Mr. Reed was one of the many unfortunate inmates who contracted COVID-19 as a result of his incarceration – greatly adding to his suffering while confined.  He has yet to regain his sense of smell, and is winded when he exercises. Affidavit of Kathleen Caulfield ("Caulfield Aff"), ¶ 2).

The impact of COVID-19 on correctional facilities has, as the Court is aware, been devastating.  But not only in terms of the number of infections, but also for the conditions of those living in the facilities that are striving to limit the number of infections.  Visitations have been reduced.  Caulfield Aff., ¶ 2.  Courses are not as readily available.  *Id*. Outside time has been limited.  *Id*.

Simply put, incarceration now is more difficult than prior to the pandemic.  And consideration of such increasingly onerous conditions – that were not taken into account by the sentencing commission or the sentencing court – is warranted and would avoid disparities under 18 U.S.C. § 3553(a).[11]

_____

[11] See *United States v. Pressley*, 345 F.3d 1205, 1219 (11th. Cir. 2003) (regarding pre-sentence confinement conditions) (stating "Pressley testified that he spent six years in presentence confinement, of which five years were spent in USP Atlanta in 23-hour-a-day lockdown. He testified that he had not been outside in five years. These facts are extraordinary, both in the length of presentence confinement and in the conditions. We cannot say that they are insufficient, as a matter of law, to support the two and a half year downward departure the district court said it would consider appropriate if it had the power so to depart") (the court ultimately remanded "for the district court to exercise its discretion as to whether to depart on the ground of harshness of conditions of presentence confinement"); (*see also United States v. Spano,*

13

1

2

E.    The Unusually Long Sentence Of Mr. Reed Is, In Conjunction With Other
Factors Listed Above, And Extraordinary And Compelling Reason
Warranting Compassionate Release

3

4

Mr. Reed is serving a life sentence – without possibility of parole – for a non-

5

violent offense.  Today, the median sentence for drug trafficking in the Central District

6

of California is sixty months.[12] The median sentence for murder is 144 months.[13] The

7

median for kidnapping is 120 months and for sexual abuse is 180 months.[14] Yet Mr.

8

Reed was sentenced to life for the non-violent offenses of manufacturing PCP and

9

possession of a weapon.

10

In *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020), the Second Circuit

11

stated that:

12

13

14

15

16

17

18

> Indeed, Congress seemingly contemplated that courts might consider
> such circumstances when it passed the original compassionate release statute
> in 1984. See S. Rep. No. 98-225, at 55-56 (1984) (noting that reduction may
> be appropriate when "other extraordinary and compelling circumstances
> justify a reduction of an unusually long sentence" (emphasis added)); see
> also *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 U.S. Dist.
> LEXIS 28392, 2020 WL 806121, at *6-*7 (D. Utah Feb. 18, 2020) (further
> discussing this history and collecting cases where district courts have
> reduced sentences in part because they were overly long).

19

20

21

22

23

476 F.3d 476, 479 (7th Cir. 2007) (regarding post-sentence confinement conditions and
noting a sentencing court can consider the argument that "the severity of a prison
sentence has two dimensions: its length, and the harshness of the conditions, and that
the harsher the conditions the shorter the sentence should be."  However, the court also
noted that the sentencing judge does not "know the conditions in which the defendant
will serve all or most or some of his sentence")).  But in the present case, the Court is
aware that the pandemic has negatively impacted every BOP facility.

24

25

26

[12] *See* U.S. Sent'g Comm'n, *Statistical Information Packet for the Central
District of California* 11 & tbl.7 (2019),
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-
sentencing-statistics/state-district-circuit/2019/cac19.pdf.

27

[13] *Id.*

28

[14] *Id.*

14

For his non-violent offense, Mr. Reed was sentenced to live and die in prison.  But a sentence of 300 months is severe, but – concededly – not "unusually long" considering the amount of drugs at issue.  And such a sentence comports with the 3553(a) factors.

F.    A Consideration Of The Section 3553(A) Factors Establish That A Sentence Of 300 Months Sufficient

      1.    The nature and circumstances of Mr. Reed's offense weigh in favor of a sentence reduction

Reed was convicted of organizing others to manufacture and distribute phencyclidine (commonly known as "PCP" or "Angel Dust") and conspiracy to possess a silencer.  His offenses were severe and dangerous. As the Court stated during sentencing, he made threats and contributed to the damage to the lives of his co-defendants and of the countless victims of PCP abuse.

But he did not kill anyone.  He did not assault anyone.  He did not kidnap anyone.  He did not steal from government aid programs or commit fraud.  He made and sold drugs – which is awful – but not nearly as awful as other crimes for which defendants serve much lesser sentences.  And while the damage he created cannot be remedied, a sentence of 300 months (25 years) is appropriate to avoid such a disparity. While he deserves a substantial sentence, he does not deserve to die behind bars.

15

2.    A sentence of 300 months reflects the seriousness of the offense,
      promotes respect for the law, and provides just punishment

Mr. Reed was arrested in 2003.  At the time, he was approximately 34 years old.  If the Court reduces his sentence to 300 months, he will likely serve approximately 21 years and 3 months, and will be 55 upon his release.  He will have spent a lengthy portion of his life incarcerated.  And he has been subjected to both the COVID-19 disease and the impacts that it has had on correctional facilities.  Such a punishment is sufficient for the crimes he has committed.

3.    A sentence of 300 months affords adequate deterrence to the criminal
      conduct at issue

A 25 year sentence is not only sufficient for a non-violent crime, but – as opposed to a life sentence – provides an incentive for self-betterment and societal re-entry.  Mr. Reed has used the last 17 years to do as much as possible to break the destructive cycle that he embraced as a youngster.  He recognized the early signs that his sons Nidrick and Rodrick were not in a good environment and actively pushed for them to be placed in a nurturing home that would provide them with the fundamentals, both moral and academic, to grow into fine young men.  He found a way to monitor and encourage their progress, and to guide them on a positive path to the future.

Within the environment of the prison, Mr. Reed has developed a reputation as a mentor and has been a moving force for change in the lives of the people he touches.  The BOP official who prepared the 2021 progress report noted that Mr. Reed has a "great inmate reputation at USP Atwater."  Wallach Decl., ¶ 3, Exhibit B.

Alphelious Rooks notes that "because of Mr. Reed's compassion and assistance I have been sober since 2016."  Wallach Decl., ¶ 8, Exhibit G.  And Chris Turner notes that Mr. Reed encouraged him to enroll in the Honor Program and Challenge Unit

16

when no one else, including his case manager, believed in him.  Mr. Turner further

writes:

> I have so much respect for him as a person and human
> being because he would try to intervene with a cool head
> and share his measure of wisdom and calm demeanor, even
> when the prison guards didn't want to stop certain behavior
> from getting out of control.

Wallach Decl., ¶ 9, EXHIBIT H.

These letters paint a picture of a man who bears little resemblance to the man

who was sentenced to life 15 years ago.  Mr. Reed's transformation has been motivated

by a simple desire to do the right thing.  He has worked to contribute to positive

changes in every way possible, despite the fact that he had no expectation to ever be

released from prison.  He is living proof that people change.  Mr. Reed is, as Barbara

Govan wrote, "at a different stage in life and actually a perfect stage to introduce the

new him back into society."  Wallach Decl., ¶ 18, EXHIBIT Q.

4.    The time Mr. Reed has served is sufficient to protect the public from
       further crimes he is capable of committing

Mr. Reed, if granted release will be 55 years old and in the company of those

advocating for his release who are willing to support his re-entry.  He will be under

Court supervision.  Additionally, Sentencing Commission data suggests that as Mr.

Reed will have aged out of crime.[15]  He will not commit future harm to the public.

---

[15] U.S. Sent'g Comm'n, *The Effect of Aging on Recidivism Among Federal
Offenders* 23 (Decl. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-
publications/research-publications/2017/20171207_Recidivism-Age.pdf (Slide 19) (last
accessed May 6, 2021) (finding that for defendants were in criminal history category IV
and released at age 55, only 4.9% were reincarcerated after release).

17

Not only do the studies which were done by the Sentencing Commission support the opinion that Mr. Reed at the age of 55, is unlikely to re-offend, but the attitudes manifested by Mr. Reed himself and the transformation noted by his family and friends also support this argument.

Mr. Reed acknowledges that his criminal conduct contributed to the "cycle of drugs and gangs in the area where [he] lived." He admits that in prison "you can surround yourself with negative influences or find positive people who want to change and be better people." Wallach Decl., ¶6, Exhibit E. And that is what Mr. Reed has done.

Mr. Reed's friend Ezell Hall sums up the changes he sees in Rodrick Reed this way:

> When he was young, Rodrick was reckless and didn't think things through. He was always talking crazy. But today he is different. He has changed a whole lot for the better. He is mature and understands things…I tell him that I am glad to see [him] talking like [he] does…

Wallach Decl., ¶ 15, Exhibit N.

5.    A sentence of 300 months, rather than life, will better promote Mr. Reed's efforts to continue his educational pursuits and vocational training, and allow him to treat the effects of his COVID infection outside of the prison medical system

Even though, at present, Mr. Reed is not to ever be released, he has engaged in academic and self-help pursuits. He has the opportunity now to live with his family and work at a job that is already secured for him – further motivating him to continue these pursuits. He will be able to obtain medical assistance outside of the prison system, which should allow him to better recover, or at least manage, the side effects from his COVID-19 infection.

18

1

2

      6.     A sentence of 300 months, while outside of the Guideline Range, is
             sufficient for the harm incurred

3

4

      For the reasons set forth above, a sentence of 300 months is – albeit outside of
the Guidelines range – sufficient for the conduct that occurred approximately eighteen

5

years ago.

6

IV.CONCLUSION

7

      For the reasons set forth above, Mr. Reed's request for a sentence reduction

8

should be granted.

9

10

Respectfully Submitted,

11

                            The Law Office of Ian Wallach, PC

12

Dated:        May 20, 2021                    --s--

13

               Los Angeles, CA                Ian Wallach

14

                                        Counsel to Defendant
                                        Rodrick C. Reed

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19